[Civ. No. 2536. Third Appellate District.—February 9, 1923.]

## J. M. SLEEPER, Petitioner, v. THE BOARD OF SUPERVISORS OF LAKE COUNTY et al., Respondents.

[1] WATER DISTRICTS—ESTABLISHMENT OF BOUNDARIES—MANDAMUS.— A writ of mandate will not issue to require a board of supervisors to establish the boundaries of a proposed county water district sought to be organized under the County Water District Act (Stats. 1913, p. 1049), where the board is not furnished with sufficient information as to the purposes and objects of the proposed organization to enable it to intelligently exercise the discretion vested in it in the matter of establishing such boundaries and excluding and including lands.

APPLICATION for a Writ of Mandate to require the establishment of the boundaries of a proposed county water district. Denied.

The facts are stated in the opinion of the court.

William Henion and Fred J. Harris for Petitioner.

H. B. Churchill for Respondents.

FINCH, P. J.—Petitioner makes original application to this court for a writ of mandate requiring respondents to establish the boundaries of a proposed county water district sought to be organized under the County Water District Act approved June 10, 1913 (Stats. 1913, p. 1049), and to call an election "for the purpose of determining whether such water district shall be incorporated."

A petition for the formation of such district was presented to the respondents, and after due hearing the board found that "no lands situated in said proposed water district will be benefited by said district or the formation thereof" and denied the petition.

The proposed district embraces a large territory. About one-fifth thereof is composed of a number of valleys around Clear Lake and the remainder is mountainous. The petition is silent as to the purposes for which it is proposed to organize the district, except such as may be inferred from the law itself. The source of water supply is not stated. It is apparent that all of the lands of the proposed district cannot be irrigated and the petition does not disclose where the water, if any, is to be applied. The evidence produced at the hearing before the board is as silent as the petition on the foregoing questions. The witness of proponents who appeared to be most familiar with the situation described several possible reservoir sites, widely separated, and testified on cross-examination by the district attorney: "If this was solely for irrigation no land would be benefited except what was irrigated. They may not only irrigate but they may develop power, and every bit of land can be benefited by development of power. Q. What is the proposed system of works of the water district? A. I don't know. Q. Do you know what the object of the proposed district is? A. For which? Q. The proposition of the formation of the various reservoir districts? A. I don't know; I can't answer you that, Mr. Churchill. Q. Before the board can determine the matter it would be essential to know that fact, what their proposed system would be, and how they are going to be benefited by the district. A. No, because the law provides it may be organized for three things, irrigation, domestic use or furnishing of power. It must be for one of those three things, or it may be for the protection of water rights. That would be a great thing, even though they did not irrigate. I look on this that it is a protection of the rights of the lands around the lake. That would be the greatest benefit that could accrue. . . . Q. You would not object to having a man taxed in Upper Lake for land that was irrigated in Big Valley? A. I would not, because anything that develops any section of Lake County is a benefit to any other section."

A large number of land owners protested against the formation of the proposed district. One of them testified at the hearing before the board as follows: ''Q. Have you ever been able to ascertain what these proponents propose to do after they have organized a district? A. No, I don't know what they intend to do. Q. Have you ever conversed or asked them what they proposed to do? A. Yes, sir. Q. What did they tell you? A. Just form a water district to keep somebody else from doing anything, that was about the way I was able to size up the question. Q. You have never been able to get a definite statement from any one of them as to what they proposed doing? A. No, sir, not one, and I have tried to do so.''

Section 3 of the statute provides: ''On the final hearing said board shall make such changes in the proposed boundaries as may be deemed advisable and shall define and establish such boundaries. But said board shall not modify said boundaries so as to exclude from such proposed district any territory which would be benefited by the formation of such district; nor shall any lands which will not, in the judgment of said board, be benefited by such district be included within such proposed district.''

The valleys included within the boundaries of the proposed district are on different sides of a large lake and it is apparent that it would not be practicable to irrigate some of these valleys from a water supply available for the irrigation of others. The respondents were not informed as to the source from which a water supply, if any, was to be obtained. They were not given any information which would enable them to determine what lands would or what would not be benefited by the formation of the proposed district or to decide intelligently whether or not to exclude the lands of any of the protestants. If it be said that the statute does not require the petition to state the purposes of the proposed district or the source of its water supply, the law does contemplate that an intelligent judgment shall be given by the board upon the question of including and excluding lands, and the basis for that judgment must be found, if not in the petition, at least in the evidence produced at the hearing. Under this statute it is possible to organize a water district without the consent and against the protest of every land owner therein, and

the land owners are entitled to be reasonably informed of the nature of the proposed works and the objects intended to be accomplished in order that they may show, if such be the fact, that their lands will not be benefited. In the absence of such information, both the land owners and the board of supervisors would be required to proceed in the dark, if petitioner's contentions be sound. If organized, the district would be authorized to incur indebtedness and issue bonds which would become a lien on all the lands of the district, even though some of the lands might receive no benefit from such district. [1] It is reasonable to require the proponents of such a district to furnish the supervisors with sufficient information as to their purposes and objects to enable the supervisors to intelligently exercise the discretion vested in them in the matters of establishing the boundaries of the proposed district and excluding and including lands. Since the proponents failed to supply the respondents with such information, petitioner is not entitled to the writ prayed for.

The petition is denied.

Burnett, J., and Hart, J., concurred.