[Civ. No. 6739.   Third Dist.   Mar. 26, 1942.]

ROSS MYRON FERRILL, Respondent, v. W. FRED ELLIS, et al., as Civil Service Commissioners, etc., Appellants.

Joseph C. Tope, City Attorney (Stockton), and H. C. Stanley, Assistant City Attorney, for Appellants.

O. C. Parkinson for Respondent.

STEEL, J. pro tem.—This is a proceeding in mandamus wherein petitioner, respondent here, obtained in the court below a peremptory writ commanding appellants as members of the Civil Service Commission of the City of Stockton, as follows:

". . . that they afford to petitioner Ross Myron Ferrill a physical examination, that such examination be limited to the determination of whether petitioner is in ordinary good health, without regard to his possession of certain artificial teeth in place of natural teeth, and that if found in ordinary good health, with the consideration of his artificial teeth in place of natural teeth excluded, they certify said Ross Myron Ferrill to the eligible list of appointees for the position of Probationary Patrolman of the Police Department of the City of Stockton."

From the record before us it appears that the City of Stockton is governed by a freeholders' charter, which includes the police department as subject to civil service regulations and rules.

Respondent, who, it is conceded, was possessed of the requisite qualification of age, residence and citizenship, applied for examination for the position of police officer of the city of Stockton, and fully passed all requirements of both the charter and commission rules, which included height, weight, chest expansion, etc., up to the question of inquiry as to the condition of his health, the requirement in this regard being that *all applicants must be in ordinary good health.* The duty of determining this question was assigned by the commission to the city surgeon, a practicing physician, who at the outset of such physical examination disqualified petitioner by reason of the fact that his upper teeth had been extracted and replaced with a plate. This ruling was upheld by the commission, and they thereupon refused to afford him a further physical examination. The instant proceeding was then instituted by petitioner, resulting in the order set forth above, from which the commission prosecutes this appeal.

Appellants assign as error the trial court's decision to the

effect that the examining physician was not justified in arriving at the conclusion that the lack of natural teeth in the upper jaw standing alone was sufficient to warrant the rejection of petitioner as lacking good health.

The main issue, therefore, is whether or not the commission, in the reasonable exercise of its discretion was justified in concluding that the petitioner was not in ordinary good health solely because he was not possessed of his natural upper teeth.

Under the city charter the commission may make suitable rules and regulations not inconsistent with the provisions of the act, and in respect to the health of an applicant the matter is left to the examining physician. Section 32-4 of article XXXII contains the following:

"All tests shall be practical and shall consist only of subjects which will fairly determine the capacity of persons examined to perform duties of the position to which appointment or promotion is to be made."

and section 32-6 reads in part as follows:

"In addition to the above, all applicants must be in ordinary good health, of good moral character, and of temperate and industrious habits, these facts to be ascertained in such manner as the commission may deem advisable. This section applies to original appointment only."

While the rule is well recognized that mandamus will not lie to compel an officer to perform a purely discretionary act in a particular manner (16 Cal. Jur. 809) there is, however, an exception to this general rule in that if the facts as admitted or proved be susceptible of but one construction or conclusion the right to the writ becomes a matter of law and the officer may be compelled to act accordingly. (*Bank of Italy* v. *Johnson*, 200 Cal. 1 [251 Pac. 784] at page 31 and cases cited.

Considering now the record before us the evidence discloses that respondent, approximately two years prior to the examination, had called upon his dentist Dr. Chalmers of Stockton, who testified at the hearing, and requested the doctor to put his mouth in good condition. At that time it appears that seven of his upper teeth were missing and the remaining nine were so situated that the installation of a partial plate or bridge would have been impracticable and therefore they were extracted and a full denture or plate

put in. The doctor testified that the nine teeth which he extracted were "absolutely in good condition" and had no abscesses or anything from which poison might enter the system.

Several experts, medical and dental, were called by the respective parties and testified as to the relative efficiency of artificial dentures as compared with natural teeth in masticating food, and the possible ill results that might occur to one's general health if they were abscessed, such ailments as indigestion, arthritis and heart trouble being mentioned. Most of this testimony was highly speculative and based upon assumptions entirely outside the facts in the instant case. The evidence shows without conflict that the petitioner is in excellent health. He was under thirty years of age and had been employed for eight years last past as a private patrolman, working long hours, and with the exception of a kidney ailment or attack in 1936, and also the removal of his tonsils, he had lost no time from his work nor had he suffered any illness.

Appellants cite numerous authorities to the effect that courts should not interfere with administrative boards and officers in the proper exercise of their discretionary powers. This unquestionably is the settled law as heretofore indicated. However, the facts here under consideration present a somewhat limited situation in that the provision in the charter for physical requirements for police duty is that the applicant be in *ordinary good health,* such fact "to be ascertained in such manner as the commission may deem advisable" or in other words, the power given the commission in this regard is to determine the *manner* in which the fact of good health or lack of it may be ascertained. And in determining whether an applicant is in good health it may not inject into the proceeding a physical requirement which does not affect his health at all or his physical ability to discharge the duties called for and then *ipso facto* reject him without affording him a complete physical examination to determine the ultimate fact, to-wit: does he possess *ordinary good health.* This apparently is the conclusion arrived at by the trial court in framing the order appealed from which is hereinabove set forth. Obviously the mere fact that one uses a false plate does not of itself constitute ill health. One of the doctors testified as follows:

"Q. You have studied and practiced in regard to the effect of a plate of that kind on a person's ordinary health, have you? A. Yes.

"Q. Would you state, then, Doctor, whether in your opinion the possession of a plate of that kind is detrimental to a man's ordinary health? A. Not to his general health, no.

"Q. If he was otherwise in ordinary good health would you say that he was rendered not in ordinary good health by reason of his having an upper plate such as Mr. Ferrill has? A. I think he is in good physical condition.

"Q. And the fact that he has that plate would not make that opinion any different? A. No."

And again another witness, testifying as to petitioner's physical condition, testified as follows:

"Q. In your opinion, Doctor, did that take him out of the class of one in ordinary good health? A. No.

"Q. In your opinion does it have any detrimental effect on his general health? A. No, it has no detrimental effect on the general health. As a matter of fact, it is often done, so far as the M.D. standpoint is concerned, to get the man in better health or to keep him from going into bad health. Because one of the most common sources of infection and consequent disability in middle or later life is infected teeth. So, if there is any indication for that, why, the man is far better off both at present and in the future to have his teeth out. I had my own taken out for backache. The only effect I have had is that I can't keep my weight down now because my health is so much better.

"Q. Then would you say, Doctor, that a denture such as Mr. Ferrill has does not take a man out of the classification of being in good health, or ordinary good health, then? A. Not only doesn't take him out of the classification, but it is possibly a protection to keep him in that classification over a longer period."

Appellants next assign as error the trial court's refusal to permit them to file a supplemental answer in the proceeding wherein is set forth an amendment to the rules and regulations of the commission as follows:

"Mouth: Pyorrhea, enlarged tonsils, adenoids, or nasal obstruction will reject. Teeth must be in good shape. Missing teeth may be supplied by crown or bridge work. At least twenty natural teeth must be present."

And also a resolution which reads as follows:

"RESOLUTION NO. 113

"IT APPEARING to the Commission from the medical report heretofore made of the applicant, that a full medical examination was not made of applicant, and GOOD CAUSE APPEARING to the Commission why a full examination of applicant in this case should be made; now therefore,

"BE IT RESOLVED BY THE CIVIL SERVICE COMMISSION OF THE CITY OF STOCKTON, AS FOLLOWS:

"That ROSS MYRON FERRILL be, and he is hereby referred to Dr. H. S. Chapman, City Surgeon for the City of Stockton, for a full and complete medical examination.

"Dated: June 20th, 1941.   (Signed)

H. A. Gibson
W. Fred Ellis.''

The record shows that petitioner was rejected because of his upper plate in March, 1941, and that he instituted the instant proceeding on May 2, 1941, the return date being May 19th, at which time appellants requested a continuance, which was granted, until June 20, 1941.   In the meantime appellants promulgated the new set of rules and regulations, *supra*, specifically requiring every applicant to have at least twenty natural teeth in his mouth.   This requirement would automatically exclude petitioner, and an examination would have been an idle act insofar as petitioner is concerned.

Appellants cite the case of *Jones* v. *O'Toole*, 190 Cal. 252 [212 Pac. 9], as authority in support of their right to amend the rules and as so amended apply them retroactively to petitioner.   The case cited is not controlling, as there the petitioner was not complaining of being deprived of anything himself but sought to have cancelled the action of the commission in giving additional points of rating to another and thereby placing him higher on the eligible list than petitioner whose own rating on the list was not disturbed.

We are constrained to hold that when an applicant has complied with all of the rules laid down by the commission and has applied for a physical examination in accordance with the then existing rules, he may not be rejected for some reason not specified in the rules and then later required to submit to an examination under a new rule setting up a

standard which, upon its face, would bar him from participating.

The judgment and order appealed from are affirmed.

Thompson, Acting P. J., and Tuttle, J., concurred.