[Civ. No. 12980.   First Dist., Div. Two.   Nov. 12, 1946.]

DAVID MOORE, Appellant, v. STATE BOARD OF EQUALIZATION et al., Respondents.

Edward Dienstag, Marcel E. Cerf and Robinson & Leland for Appellant.

Robert W. Kenny, Attorney General, J. Albert Hutchinson, Deputy Attorney General, for Respondents.

GOODELL, J.—The appellant sought by mandate to compel the respondents to vacate their order revoking his licenses. This appeal was taken from the order denying a peremptory writ.

In January, 1944, two "off-sale" licenses were issued to appellant by the respondent board, authorizing the sale of wine, beer and distilled spirits for consumption off the licensee's premises. On March 4, 1944, an information was filed in the federal court charging appellant with a violation of the Emergency Price Control Act in having sold, on February 26, 1944, a quart bottle of whiskey for $8.00 when its "ceiling" price was $3.15. He pleaded guilty and was fined $500 and granted probation for one year.

On April 12, 1944, a complaint was filed with the board charging appellant with a violation of its rule 35, based on said conviction. A hearing was set for May 4 and notice thereof, accompanied by a copy of the complaint, was served on appellant. At the hearing the board introduced a certified record of said information and of the judgment of conviction and rested. Appellant's counsel then said: "We submit, and move for dismissal," to which the hearing officer replied that he had no authority to act on such a motion. Appellant's counsel responded "We have nothing to offer," and the matter was submitted.

Findings were filed, with the recommendation that the licenses be revoked, to which appellant filed objections. On June 2 the board unanimously approved the recommendation.

On June 7, 1944, appellant's petition for a writ of mandate was filed and an alternative writ issued. At the trial the only evidence introduced was the record before the board and a stipulation that appellant knew nothing of rule 35 until after his appearance in the federal court, that the rule had not been published, and that a copy of the board's rules (in effect in August, 1943) did not contain rule 35. The court decided in favor of the board.

In the meantime the appellant exhausted his administrative remedies by petitioning the board for a reconsideration, which was denied on July 18, 1944.

Rule 35 reads as follows: "After proceedings are duly had, pursuant to the provisions of Sections 40 and 45 of the Alcoholic Beverage Control Act, upon a complaint alleging, and a finding by the Board, that a licensee has been convicted of the offense of buying or receiving stolen alcoholic beverages or of a violation of the federal laws or regulations relating to ceiling prices for alcoholic beverages, the license of such licensee shall be revoked."

The appellant contends that the board has no power (1) to enlarge, by rule, the statutory grounds for revocation, or (2) to adopt, as its own, regulations which might be made from time to time by the Office of Price Administration; (3) that a violation of O. P. A. regulations is not a public offense involving moral turpitude, and (4) that rule 35 was not promulgated as required by law. Thus it will be seen that the appellant's attack is based primarily on statutory grounds.

In their brief the respondents directly tendered issue on the following points but the appellant has refused a joinder

thereon by failing to file a reply brief: (1st) That *both* the constitutional provision *and* the Alcoholic Beverage Control Act empower the board to revoke a license upon a determination that its continuance would be contrary to public welfare or morals; (2nd) That the board is not restricted by many of the general doctrines relating to state-wide administrative agencies created by the Legislature, but possesses more comprehensive power and discretion under the constitutional provision than is usual in this state; (3d) That the constitutional provision confers power independently upon the board which power the Legislature cannot restrict or diminish, and (4th) That the board is not restricted in revoking a license to the grounds stated in the act, but may take disciplinary action on other grounds within the constitutional provision.

Section 22 of article XX of the state Constitution reads: ". . . The State Board of Equalization shall have the exclusive power to license the . . . sale of intoxicating liquors in this State, . . . and shall have the power, in its discretion, to deny or revoke any specific liquor license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals."

The Alcoholic Beverage Control Act (Stats. 1935, p. 1123; 2 Deering's Gen. Laws, Act 3796, p. 1353) was enacted seven months after this amendment had laid the foundation for such legislation. In its 180-odd sections it contains a wide variety of provisions relating to alcoholic beverages and kindred subjects and vests in the board, by virtue of the underlying constitutional authority, numerous powers and functions.

Section 38 of the act provides, "The board shall administer all of the provisions of this act and to that end shall prescribe all necessary rules and regulations to carry out such provisions. . . ." Sections 40 et seq. provide for complaints, notice, hearing, findings, recommendation, decision and rehearing by the board, and for court review.

Section 40 prescribes among the "grounds which constitute a basis for the suspension or the revocation of licenses" that "When the continuance of such license would be contrary to public welfare or morals; but proceedings under section 40 upon this ground shall not be deemed a limitation upon the board's authority to proceed under Article XX, section 22 of the Constitution of this State."

It will be observed that the first phrase was lifted bodily

out of section 22 of article XX. It is noteworthy, also, that by the last phrase the Legislature definitely recognized the plenary powers directly lodged with the board by the Constitution. (See *Irvine* v. *State Board of Equalization,* 40 Cal.App.2d 280, 285, 286 [104 P.2d 847].)

It is clear, therefore, that, as contended by the attorney general in his first point, *both* the Constitution *and* the act authorize revocation by the board.

The complaint before the board notified the appellant that the proceedings were taken under article XX, section 22 of the state Constitution.

Since the briefing of this appeal the Supreme Court has decided the companion cases of *Covert* v. *State Board of Equalization,* 29 Cal.2d 125 [173 P.2d 545], and *Reynolds* v. *State Board of Equalization,* 29 Cal.2d 137 [173 P.2d 551, 174 P.2d 4] (October 17, 1946), in both of which the board's action was taken, *as it was here,* in the exercise of its constitutional powers and not under the Alcoholic Beverage Control Act.

In the Covert case the petitioner, a citizen of Glendale, filed a complaint with the board asking that it revoke the liquor license of one McMillan on the ground that his cafe was a public saloon and not a bona fide restaurant. After a hearing the board concluded that the evidence did not establish a violation and dismissed the complaint. Covert then went into the superior court in a mandate proceeding and that court reweighed the evidence before the board, made new findings to the effect that the principal business of the cafe was the sale of intoxicating liquors and that the serving of food was a pretense and a sham in order to give the business the appearance of a restaurant, and issued a peremptory writ directing the board to revoke the license.

That judgment was reversed, the Supreme Court holding, *inter alia,* that the board "is given its liquor control authority directly by the Constitution." The difference between powers given to an administrative agency by the Constitution and those given to it by statute (urged as the attorney general's second point) is clearly pointed out in the opinion. Therein the court says: "An examination of the Constitution of California shows that the State Board of Equalization, unlike most other agencies of statewide authority (see *Laisne* v. *California State Board of Optometry,* 19 Cal.2d 831 [123 P.2d 457]), has specifically been given quasi judicial, or ad-

judicating power, that is, the right to make determinations of fact which are not subject to reexamination in a trial de novo in the superior court."

After quoting section 22 of article XX the opinion continues: "In order to revoke a license the board obviously must examine the facts, resolve any conflicts in the evidence, and exercise its judgment with respect thereto. A revocation may be only 'for good cause,' and, accordingly, the board must afford an opportunity for a full hearing, an essential element of a quasi judicial proceeding. [Citations.] This does not mean, of course, that the 'discretion' given to the board is absolute, since it must be exercised in accordance with the law.

"The functions of the board are thus similar in some respects to those of a local administrative tribunal, a decision of which will be sustained if it has committed no error of law and if the evidence, although conflicting, is sufficient to support its findings of fact [Citations]. . . ." Further the court says:

"It would appear, therefore, from the foregoing authorities, that the decisions of the board are final, subject to review for excess of jurisdiction, errors of law, abuse of discretion and insufficiency of the evidence, and that where there is error the matter ordinarily should be remanded to the board for further proceedings. . . ."

In holding that "the board must afford an opportunity for a full hearing" the Covert case reaffirms what the Irvine case held in that regard. The procedural machinery leading up to and surrounding such hearing is supplied by sections 40 et seq. of the act without impairing the board's constitutional powers. (Irvine case, *supra*, pp. 285, 286.) Indeed, in the drafting of rule 35 the board recognized that such procedure should be followed. An examination of the record shows that in the instant case the board followed such procedure and from what was said earlier it is clear that appellant unquestionably was afforded an opportunity for a full hearing. No claim is made to the contrary. At that hearing he had "nothing to offer." Moreover, the board acted with deliberation, for more than three months elapsed from accusation to final board action.

■ The only attack which might be said to question the proper exercise of the board's discretion in the instant case

is appellant's claim that rule 35 set up a rigid standard which bound the board in advance to be guided by any and every regulation which the O. P. A. might turn out touching liquor prices, thereby foreclosing itself from exercising discretion in individual cases. We cannot follow this argument, for it is clear that at a board hearing a licensee would have every opportunity, as this appellant had, to make a full showing by way of mitigation, excuse or avoidance, which showing of course would be addressed to the board's discretion in the particular case. ■ Appellant's additional contention, that the rule bound the board to *revoke* in every case rather than *suspend,* is answered by the Reynolds case, *supra,* which holds that the power to revoke includes the power to suspend.

■ There is nothing in the constitutional provision which requires the board to prescribe by rule what infraction or misconduct will put a license in jeopardy. It so happened in this instance that the board saw fit to adopt the rule in question some two months before appellant's licenses were even issued and over three months before he got into trouble. The fact that such a rule chanced to be adopted cannot possibly weaken the board's position. It indicates rather an attitude of fairness, by way of a declaration of board policy, if nothing else (see *Bank of Italy* v. *Johnson,* 200 Cal. 1, 22, 23 [251 P. 784]) so that licensees might be forewarned.

■ A liquor license is "but a permit to do what would otherwise be unlawful" (Irvine case, *supra,* p. 284; see, also, *Blatz Brewing Co.* v. *Collins,* 69 Cal.App.2d 639, 643 [160 P.2d 37]). These licenses, paradoxically enough, gave appellant the *privilege* of making the very sale by which he violated the Emergency Price Control Act. It was not as if he had violated a postal law or some other unrelated federal statute; his offense (as in *Moskovitz* v. *City of St. Paul,* 218 Minn. 543 [16 N.W.2d 745]) was directly related to his liquor licenses.

■ Moreover, by section 40, subdivision 2, of the act the Legislature has prescribed as grounds for revocation the violation by a licensee of the act itself, or of any rules or regulations adopted thereunder, or of "any other penal provisions of law of this State prohibiting or regulating the sale, exposing for sale, use, possession, giving away, adulteration, dilution, misbranding or mislabeling of alcoholic beverages or intoxicating liquors." The board might well have reasoned by an-

alogy that if the violation of a state liquor law or regulation constituted good cause, the violation of a federal law, or regulation which dealt with the same subject should likewise constitute good cause for revocation.

We are satisfied that in revoking these licenses the board did not abuse its discretion.

The attorney general's third and fourth points, i. e., that the Constitution confers power independently on the board and that the board is not restricted in the revocation of a license to the grounds stated in the act, but may take disciplinary action on other grounds within the constitutional provision are amply sustained by the authorities including the Covert case. In the Irvine case, *supra,* it is said at page 285: "The sections of the Alcoholic Beverage Control Act involved herein merely regulate procedure and are not designed to, nor do they in any way, impair the constitutional power of the Board of Equalization, nor do they even remotely attempt to regulate or define what jurisdiction the board shall possess." And further: "When legislative action prescribing a mode in which the board shall exercise its jurisdiction does not circumscribe the latter's powers as derived from the Constitution, such procedural legislation does no violence to the jurisdiction of the board, nor does it interfere with the broad discretion lodged in the board to control the issuance and cancellation of liquor licenses. It is only where the legislative action impairs the powers granted by the Constitution, or defeats the exercise of such powers, that it is without force or effect." In *Hansen* v. *State Board of Equalization,* 43 Cal.App.2d 176, 180 [110 P.2d 453] (a case involving the *granting* of a license), it is said: "The constitutional provisions mentioned above are designed to give the Board broad discretionary powers in the matter of granting or refusing to grant licenses of this character." We repeat, subdivision 1 of section 40 of the act covers, literally, the same ground as section 22 of article XX, leaving it to the board to say what shall be "contrary to public welfare or morals."

The answer to appellant's first contention, i. e., that the board has no power to enlarge, by rule, the statutory grounds for revocation, is, as already indicated, that in adopting the rule the board did not rely on the rule-making provisions of section 38 of the act. The source of its power was section 22 of article XX. For that reason such cases as *Whitcomb Hotel,*

*Inc.* v. *California Employment Commission,* 24 Cal.2d 753 [151 P.2d 233, 155 A.L.R. 405]; *First Industrial Loan Co.* v. *Daugherty,* 26 Cal.2d 545 [159 P.2d 921], and *Blatz Brewing Co.* v. *Collins, supra,* 69 Cal.App.2d 639, which appellant cites, are not in. point. .

The second contention, i. e., that the board is without power to commit itself to O. P. A. regulations which might be made from time to time, has been fully discussed and we think answered.

The appellant's third and fourth points, based entirely on the statute, have been answered by what has been already said herein.

The order denying a peremptory writ of mandate is affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied December 12, 1946.