[L. A. No. 25775. In Bank. June 2, 1960.]

ROBERT D. HOUGH, Petitioner, v. ROBERT McCARTHY, as Director of Motor Vehicles, Respondent.

274

Robert D. Hough, in pro. per., Hackler, Flaum & Ansell, W. Neal Writer and Charles K. Hackler for Petitioner.

Stanley Mosk, Attorney General, E. G. Funke, Assistant Attorney General, Warren H. Deering and Arthur de Goede, Deputy Attorneys General, for Respondent.

GIBSON, C. J.—The Department of Motor Vehicles suspended petitioner's driver's license following his conviction of violating section 23102 of the Vehicle Code, which provides that the driving of a vehicle upon a highway by any person who is under the influence of intoxicating liquor is a misdemeanor.[1] Petitioner, contending that the department had no authority to take this action, seeks a writ of mandate compelling Robert McCarthy, as Director of Motor Vehicles, to set aside the order of suspension.

The trial resulting in petitioner's conviction took place in the Los Angeles Municipal Court on October 21, 1959. After an inquiry which established that petitioner had not been involved in an accident in connection with the drunk driving violation and that he had not been previously arrested upon a similar charge, the court sentenced him to pay a fine and recommended that his license not be suspended.

The department on November 13, 1959, without notice or hearing, suspended petitioner's license for a period of 90 days commencing on October 21, 1959, and for an additional overlapping period effective November 27, 1959, through April 20, 1960. This order was made on the basis of an abstract of the court record which did not show that a recommendation against suspension had been made. The omission was called to the department's attention by petitioner at an informal hearing, and on February 24, 1960, after receipt of a corrected abstract, the department vacated the order of November 13 and made a new order suspending petitioner's driving privilege effective November 27, 1959, through April 20, 1960. Petitioner's driving record, produced at the informal hearing, showed that he was convicted in 1956 of violating former section 540, subdivision (b) of the Vehicle Code (relating to the manner of making a left turn) and in February 1959 of speeding at a rate of 49 miles per hour in a 35-mile zone in violation of former section 510.

The order of February 24 states that the suspension was made because of petitioner's conviction of driving while under the influence of intoxicating liquor and upon review of his driving record and that the action was taken in the interest

---

[1]Unless otherwise noted, references are to the Vehicle Code as recodified in 1959.

of safety on the highways and under the authority of "sections 13354-13953" of the Vehicle Code. A printed statement on the back of the order, incorporated by reference, declares that the application of ordinary means of securing public safety by inducement and persuasion has failed to arrest the increase in frequency of accidents due to persons driving while under the influence of intoxicants, that the frequency of such accidents will continue to be enhanced by the increased congestion on the highways, and that in the interest of safety of persons on the highways the director finds it necessary to suspend the operators' licenses of persons convicted of so driving. In March petitioner was notified that any further action by the department would be held in abeyance pending the outcome of this proceeding and that petitioner is entitled to drive a motor vehicle until further notice.

Both the court in which a person is convicted of driving while under the influence of intoxicating liquor and the Department of Motor Vehicles have statutory powers with respect to suspension of the operator's license of the person convicted. Section 13201 of the Vehicle Code provides that the court may suspend the privilege of any person to operate a motor vehicle, for a period not to exceed six months, upon conviction of misdemeanor drunk driving under section 23102.[2] Section 13354 provides: "The department may suspend or revoke the privilege of a person to operate a motor vehicle upon a conviction of the licensee of operating a vehicle while under the influence of intoxicating liquor."[3]

Petitioner contends that section 13354 is rendered inapplicable here by subdivision (a) of section 13352, which provides that the department, upon receipt of an abstract of a court record showing a person's first conviction for misdemeanor drunk driving, shall immediately suspend his driver's license for a period of 90 days unless the court suspends the privilege under section 13201 "or recommends no suspension."[4] It is petitioner's position that section 13354 is a gen-

---

[2]Section 13201 of the Vehicle Code provides in part: "A court may suspend the privilege of any person to operate a motor vehicle, for a period not exceeding six months, upon conviction of any of the following offenses: (a) Driving while under the influence of intoxicating liquor under section 23102. . . ."

[3]Section 13556 states that, unless otherwise specifically provided, no suspension by the department shall be for a longer period than six months.

[4]Section 13352 of the Vehicle Code provides:

"The department shall immediately suspend or revoke the privilege of any person to operate a motor vehicle upon receipt of a duly certified abstract of the record of any court showing that the person has been

eral provision and that it is controlled and limited by section 13352, which, he asserts, is a specific statute directly applicable here and which, by its terms, does not authorize a suspension by the department where the court has recommended, upon a first conviction of misdemeanor drunk driving, that there be no suspension.

A court must, where reasonably possible, harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions. (*County of Placer* v. *Aetna Cas. etc. Co.*, 50 Cal.2d 182, 188-189 [323 P.2d 753]; *Estate of Stevens*, 27 Cal.2d 108, 119 [162 P.2d 918]; *County of Los Angeles* v. *Frisbie*, 19 Cal.2d 634, 641-642 [122 P.2d 526]; *Southern Pac. Co.* v. *Railroad Com.*, 13 Cal.2d 89, 100 [87 P.2d 1055].) This rule applies although one of the statutes involved deals generally with a subject and another relates specifically to particular aspects of the subject. (See *Pierce* v. *Riley*, 21 Cal.App.2d 513, 518 [70 P.2d 206]; *Cohn* v. *Isensee*, 45 Cal.App. 531, 536-537 [188 P. 279].)

Section 13354 gives the department a permissive, discretionary power, since it states that the department "may" suspend or revoke, whereas section 13352, which declares that the department "shall immediately" suspend or revoke, is mandatory with respect to the specific situations there referred to. Under section 15 of the Vehicle Code, " 'Shall' is mandatory and 'may' is permissive," and there is nothing to indicate that the words were used in any other sense in the provisions involved here. Section 13354, in giving the department

---

convicted of driving a motor vehicle while under the influence of intoxicating liquor. The suspension or revocation shall be as follows:

"(a) Upon a first such conviction other than under Section 23101 [felony drunk driving] such privilege shall be suspended for a period of 90 days, unless the court in case of the first conviction only suspends such privilege under authority of Section 13201 or recommends no suspension.

"(b) Upon a first such conviction under Section 23101 such privilege shall be suspended for one year and shall not be reinstated until such person gives proof of ability to respond in damages as defined in Section 16430.

"(c) Upon a second such conviction within seven years, such privilege shall be suspended for one year and shall not be reinstated unless and until such person gives proof of ability to respond in damages as defined in Section 16430.

"(d) Upon a second such conviction under Section 23101 within three years, such privilege shall be permanently revoked.

"(e) Upon a third or subsequent such conviction within 10 years such privilege shall be revoked and shall not be reinstated for a period of three years and until such person files proof of ability to respond in damages as defined in Section 16430."

a discretionary power to suspend, by its terms applies generally in all cases where a person has been convicted of drunk driving, and it contains no limitation upon the department based on a suspension made by the court or on a recommendation against suspension. To the contrary its provisions, which empower the department to revoke as well as suspend, show that in the event of a first conviction of misdemeanor drunk driving the department has broader authority with respect to licenses than the courts, which are only given the power of suspension in such cases. (Veh. Code, § 13201, subd. (a).)

We do not find any language in the statutes which would justify a conclusion that the "unless" clause in subdivision (a) of section 13352 was intended to apply to functions of the department other than the mandatory duty imposed by that subdivision. The broad permissive powers of the department under section 13354 are obviously limited by the mandatory provision of that subdivision to the extent that the department may not refrain from acting when a mandatory suspension for 90 days is required. Subdivision (a), however, does not purport to place any other limitation upon the department, and the court has not been given any authority to make a determination that will preclude the department from exercising its discretionary powers to suspend or revoke. Insofar as concerns those powers, the only effect of a court recommendation against suspension is to relieve the department of any mandatory duty under subdivision (a) and to make available judicial advice or suggestion which the department may accept or reject. Several other sections of the Vehicle Code, which refer to court recommendations in connection with the suspension of drivers' licenses, are not helpful in determining the proper meaning of subdivision (a), since they merely demonstrate that words such as "recommends" are used in the code both in a mandatory and advisory sense.[5]

---

[5]Section 13550 uses the word "recommends" in the same sense in which it is used in section 13352: "Whenever any person is convicted of any offense for which this code makes mandatory the revocation or suspension by the department of the privilege of the person to operate a motor vehicle, or is convicted under section 23102, unless, under section 13352 the court recommends that there be no suspension," the privilege is suspended or revoked until the department acts as required by the code, and the court must obtain the driver's license and forward it to the department.

Section 13356 provides that upon the "recommendation" of the judge of a juvenile court the department "shall" revoke or suspend the driving privilege for certain designated offenses, and the language of the section plainly shows that this recommendation is given a mandatory effect.

■ It should be pointed out that the department's discretionary powers also exist when the court in which the driver is convicted takes some action other than recommending that there be no suspension. The court, as we have seen, may suspend the license instead of recommending against suspension; since both situations are treated identically in the "unless" clause of subdivision (a) of section 13352 and since both come equally within the broad language of section 13354, it is obvious that the Legislature intended that in either instance the department should have the same discretionary powers, namely, to suspend for a period of not over six months or to revoke. ■ Even as to cases where the court is silent concerning suspension and the department therefore has a mandatory duty to suspend for 90 days under subdivision (a), there is no provision that imposition of the mandatory suspension exhausts the power of the department to act or precludes it from increasing the length of the suspension period or from revoking the license under its permissive powers. The effect of section 13352 is to provide for mandatory *minimum* suspensions in the situations there specified. Any other construction of the statutes would compel us to read into section 13354 restrictions that are not made there and are not required in order to carry out the purposes of any of the sections.

Statutory provisions relating to suspension or revocation of licenses by both the department and the courts have existed for many years. Insofar as concerns first convictions of misdemeanor drunk driving, substantially the same provisions regarding suspension by the department as now appear in sections 13352 and 13354 have existed since 1949. (Former §§ 307 and 306, respectively.) In a number of previous years the statutes made suspension or revocation mandatory. From 1919 until 1923 and from 1931 until 1949 the department was required to take such action (Stats. 1919, ch. 147, p. 225; Stats. 1931, ch. 1026, p. 2110; Vehicle Code of 1935, § 304 as enacted in 1935, § 307 as amended in 1937, 1939, 1941, 1943, 1945, and 1947.) In the intervening years, 1923 to 1931, it was mandatory for the court in which a person was convicted of

---

In section 13358 it is stated that upon the "recommendation" of the judge or referee of a juvenile court or of a juvenile probation officer of a county the department "may" suspend or revoke the driving-privilege of any minor within the jurisdiction of the court, thus clearly granting a discretionary power.

Section 13208 provides that in certain criminal proceedings the court may, in its discretion, "recommend" to the department that an investigation be made to determine whether a license should be suspended or revoked.

drunk driving to suspend his license. (Stats. 1923, ch. 266, p. 534; Stats. 1929, ch. 258, p. 559.) During the periods in which the statutes imposed upon the department a mandatory duty to suspend or revoke, the court was given discretionary authority to suspend. (Stats. 1919, ch. 147, p. 225; Stats. 1929, ch. 253, p. 537; Vehicle Code of 1935, § 292, remaining substantially unchanged until 1959.)

A number of other states have statutory provisions for mandatory suspension or revocation of an operator's license upon a first conviction of misdemeanor drunk driving. (For example, 13 Fla. Stats. Ann. (1958), § 322.26, (Supp. 1959), § 322.28; Ky. Rev. Stat. (1955), § 186.560; N. Y. Vehicle and Traffic Law (Supp. 1959), § 71; 1C Gen. Stats. of N. C. (1953), § 20-17, (Supp. 1959), § 20-19; 47 Okla. St. Ann. (1950), §§ 295, 297, (Supp. 1959), § 93; 19 Tex. Civ. Stat. (Vernon 1960), art. 6687b, § 24; 7 Code of Va. (1958 Replacement Volume), §§ 46.1-417 and 4 Code of Va. (1950), § 18-75, (Supp. 1958), § 18-77.) The Uniform Vehicle Code provides for mandatory revocation. (See Uniform Vehicle Code, 1956 revision, § 6-205, p. 59.) It thus appears that the present provisions of our Vehicle Code are less severe than some statutes in other jurisdictions as well as earlier statutes in this state.

■ Petitioner asserts that the suspension of his license constitutes the imposition of a criminal sanction and that, in view of the penalty fixed by the court, it amounts to double punishment. Although there is an element of punishment involved when an administrative agency regulates conduct by means of suspending licenses, the language of the statutes, as pointed out above, shows that the Legislature intended to give both the department and the court power to impose suspensions. In effect, what the Legislature has done is to declare that a person upon his first conviction of misdemeanor drunk driving may be deprived of the privilege of driving a car unless the department as well as the court permits him to do so. As we have seen, the present statutes are less severe than the provisions for mandatory suspension or revocation which formerly existed in this state and which are found in some other jurisdictions, and we cannot properly hold that the legislative plan is unreasonable.

■ There is no merit in petitioner's contention that the powers granted to the department under section 13354 are restricted by sections 12810 and 13800. Section 12810 establishes a "violation point count" system under which a value of two points is given to certain violations, including misde-

meanor drunk driving, and a value of one point is given to other violations and certain accidents. The section further declares that a driver is prima facie presumed to be a negligent operator when his record shows four or more points in 12 months, six or more points in 24 months, or eight or more points in 36 months. Section 13800 provides that the department may conduct an investigation to determine whether the driving privilege of any person should be suspended or revoked upon receiving information or upon a showing by its records that, among other things, the licensee is a negligent driver. It is clear from the language of the statutes that sections 12810 and 13800, on the one hand, and section 13354, on the other hand, provide for separate, and under some circumstances alternative, grounds for suspension or revocation within the discretion of the department, and there is nothing in any of the provisions which indicates that the department cannot act under section 13354 unless there are also grounds for suspension or revocation under the other sections.

The next question to be determined is whether the department has properly exercised the discretion conferred upon it by statute. It appears that upon being informed of a person's conviction of misdemeanor drunk driving the department suspends his license and that such action is taken without a prior hearing. The licensee is immediately notified that the Vehicle Code provides for a subsequent hearing (Veh. Code, § 14100),[6] and a hearing is accorded him if he requests it. The director has publicly announced and admittedly has applied a policy of suspending or revoking the license of every person convicted of misdemeanor drunk driving. Petitioner contends that the department is powerless to act without a prior hearing in a case of this type and that, in applying the policy of suspending or revoking in all cases without consideration of the facts relating to each individual, the director has exceeded his statutory authority and has acted unreasonably.

 With respect to the power of the department to act without a prior hearing, section 13953 of the Vehicle Code provides in part: "In the alternative to the procedure under Sections 13950, 13951, and 13952 and in the event the depart-

---

[6]Section 14100 of the Vehicle Code provides: "Whenever the department has given notice or taken or proposes action under Section 13950, 13951, 13952, or 13953, the person receiving the notice or subject to the action taken or proposed to be taken may, in writing and within 10 days, either demand an informal hearing or a formal hearing which shall be granted, except as provided in Section 14101 or 14102. An application for a hearing shall not operate to stay the action by the department for which notice is given."

ment determines upon investigation or re-examination that the safety of the person subject to investigation or re-examination or other persons upon the highways require such action, the department shall forthwith and without hearing suspend or revoke the privilege of the person to operate a motor vehicle or impose reasonable terms and conditions of probation which shall be relative to the safe operation of a motor vehicle.'' It has been suggested that the investigation referred to in section 13953 must relate to the matters specified in section 13800 and that, since a drunk driving conviction is not expressly mentioned in section 13800, the summary procedure provided for in section 13953 cannot be resorted to where the department proposes to suspend a license under its discretionary powers.[7] However, section 13953 is not limited in this manner.

The summary procedure provided for in section 13953 is an ''alternative'' to the notice and hearing procedure set forth in sections 13950, 13951 and 13952.[8] Section 13950 applies

[7]Section 13800 provides: ''The department may conduct an investigation to determine whether the privilege of any person to operate a motor vehicle should be suspended or revoked or whether terms or conditions of probation should be imposed upon receiving information or upon a showing by its records:

''(a) That the licensee has been involved as a driver in any accident causing death or personal injury or serious damage to property.

''(b) That the licensee has been involved in three or more accidents within a period of 12 consecutive months.

''(c) That the licensee is a reckless, negligent, or incompetent driver of a motor vehicle.

''(d) That the licensee has permitted an unlawful or fraudulent use of his driver's license.

''(e) That any ground exists for which a license might be refused.''

Section 13801 provides: ''In addition to the investigation, the department may require the re-examination of the licensee, and shall give 10 days' written notice of the time and place thereof. If the licensee refuses or fails to submit to the re-examination, the department may peremptorily suspend the driving privilege of the person until such time as the licensee shall have submitted to re-examination. The suspension shall be effective upon notice.''

[8]Section 13950 provides: ''Whenever the department determines upon investigation or re-examination that any of the grounds for re-examination are true, or that the safety of the person investigated or re-examined or other persons upon the highways requires such action, and it proposes to revoke or suspend the driving privilege of the person or proposes to impose terms of probation on his driving privilege, notice and an opportunity to be heard shall be given before taking the action.''

Section 13951 provides: ''Whenever the department proposes to refuse to issue or renew a driver's license, it shall notify the applicant of such fact and give him an opportunity to be heard.''

Section 13952 provides: ''The notice shall contain a statement setting forth the proposed action and the grounds therefor, and notify the person of his right to a hearing as provided in this part, or the department, at the time it gives notice of its intention to act may set the date of hearing, giving 10 days' notice thereof.''

"Whenever the department upon investigation or re-examination determines that any of the grounds for re-examination are true, *or* that the safety of the person investigated or re-examined or other persons upon the highways" requires suspension or revocation of a driver's license or imposition of terms of probation and the department proposes to take such action. (Italics added.) Even if the phrase "that any of the grounds for re-examination are true" is to be understood as referring only to the grounds specified in section 13800, the quoted language following the word "or" shows that the notice and hearing procedure is to be used in any case where it is determined that safety calls for one of the disciplinary measures the department may take, and, given a situation requiring immediate action, the alternative procedure in section 13953 is equally applicable. Thus, when the safety of persons upon the highways requires immediate suspension of the licenses of those convicted of drunk driving, section 13953 makes a prior hearing unnecessary.

Suspension or revocation of a driver's license without a prior hearing does not violate due process where the action is justified by a compelling public interest. (*Escobedo* v. *State of California,* 35 Cal.2d 870, 876-877 [222 P.2d 1].) Such a public interest in the immediate suspension of licenses of persons convicted of drunk driving is shown by the factors which the director has taken into consideration. The order suspending petitioner's license shows that the director relied upon the administrative determination that ordinary methods of persuasion have failed to stop the increase in accidents due to drunk driving and that the frequency of such accidents will be enhanced by increased congestion on the highways. In 1959 there were 31,763 convictions of first offense drunk driving in California, and the courts recommended no suspensions in 19,171 of those cases. Between July 1, 1959, and February 25, 1960, a total of 11,418 suspensions and 2,858 revocations for drunk driving were ordered under the discretionary powers of the department. The incidence of death and serious injury on the highways has undeniably assumed tragic dimensions and has been due in a significant degree to the effects of alcohol upon drivers. So long as the measures adopted do not amount to a substantial invasion of individual rights, society must not be prevented from seeking to combat this hazard to the safety of the public. (*People* v. *Duroncelay,* 48 Cal.2d 766, 772 [312 P.2d 690].)

 The fact that the director is presently applying a policy of suspending or revoking licenses in all cases of this type does not mean that he has failed to exercise his discretion as contemplated by statute or that he has acted unreasonably. In order to warrant suspension under section 13354 no showing of an individual's lack of fitness to drive need be made other than proof of a conviction of drunk driving, and there is nothing in the code to indicate that the existence of a court recommendation against suspension requires any further showing of individual unfitness. It is obvious from the statutory scheme that it is the duty of the department to consider the general conditions on the highways and exercise its discretion in the light of its specialized information and experience regarding those conditions. The court's recommendation, which is based upon circumstances relating to the individual and may be made without such specialized knowledge, is advisory only and should not be followed where, as here, the department, in the exercise of its discretion, determines that the public interest requires different action. This determination, of course, may be altered at any time if the director concludes that a change is warranted. At present the number of convictions resulting from driving while under the influence of intoxicating liquor is appalling, and we cannot properly say that the director abused the discretion vested in him by section 13354 in determining that every driver convicted of such an offense should be deprived of his operator's license for at least some period of time.

 Petitioner contends that he was not afforded a fair administrative hearing within the meaning of sections 11500-11528 of the Government Code (a portion of the Administrative Procedure Act) because, he asserts, the department failed to follow certain requirements of that act.[9] Subdivision (a) of section 11501 of the Government Code, however, contains the following limitation: "The procedure of any agency shall be conducted pursuant to the provisions of this chapter *only* as to those functions to which this chapter is made applicable by the statutes relating to the particular agency." (Italics added.) The sections cited by petitioner are all contained in the same chapter in which section 11501 is found. The only provision of the Vehicle Code making this chapter of the

[9]Petitioner claims that the department did not comply with provisions which concern the contents of an accusation (Gov. Code, § 11503), the manner of conducting a hearing (Gov. Code, §§ 11502, 11512), and the requirement that oral evidence be taken on oath or affirmation (Gov. Code, § 11513).

Government Code applicable is section 14112, which reads: "All matters in a *formal* hearing not covered by this part shall be governed, as far as applicable, by the provisions of the Government Code relating to administrative hearings, and particularly by" the chapter referred to above which contains sections 11500-11528. (Italics added.) There is no comparable provision with respect to *informal* hearings. Petitioner did not request a formal hearing, and the hearing held by the department was an informal one. The provisions of the Administrative Procedure Act cited by petitioner, therefore, are not applicable here.

It is also claimed that petitioner is entitled to a de novo review of the evidence by this court and that the suspension order is against the weight of the evidence. He has, however, admitted that he was convicted of misdemeanor drunk driving and of the traffic law violations referred to above, and he has not shown any inaccuracy with respect to the recitals in the suspension order relating to accidents and traffic conditions on the highways or to the effect of driving while under the influence of intoxicating liquor. The matter of the penalty to be imposed in the light of the facts is committed to the discretion of the administrative agency. (*Nardoni* v. *McConnell,* 48 Cal.2d 500, 506 [310 P.2d 644] ; *Bonham* v. *McConnell,* 45 Cal.2d 304, 306 [288 P.2d 502] ; cf. *Shepherd* v. *State Personnel Board,* 48 Cal.2d 41, 51 [307 P.2d 4].) Under these circumstances there is no occasion for a trial de novo.

The alternative writ of mandate is discharged, and a peremptory writ is denied.

Traynor, J., White, J., and Dooling, J., concurred.

PETERS, J.—I dissent.

I agree with much that is said in the majority opinion. I particularly agree that section 13354 of the Vehicle Code gives to the department the discretionary permissive power to revoke or suspend a driver's license, in a proper case, after a first conviction of misdemeanor drunk driving, even though the trial court recommends to the contrary. I further agree that such discretionary authority exceeds the power to suspend or revoke conferred upon the courts, and that, in a proper case, the department may reject the recommendation of the trial court. It is also a proper interpretation of section 13953 of the Vehicle Code to hold that the director may exer-

cise his discretionary power to suspend before a hearing is held. Such procedure is undoubtedly lawful (*Escobedo* v. *State of California*, 35 Cal.2d 870 [222 P.2d 1].) It also seems correct to hold, as do the majority, that the "double punishment" feature of our law as to drunk drivers is valid.

But I cannot agree that it is a proper exercise of the discretionary power conferred by section 13354 for the director to determine in advance to suspend the license of every driver convicted for the first time of misdemeanor drunk driving, regardless of the circumstances of the particular case, and regardless of the recommendation of the trial court in that particular case. To condone such a procedure is to permit the director, by administrative fiat, to make suspensions under section 13354 mandatory and not discretionary in clear violation of the declared policy of the Legislature to the contrary. By administrative fiat the director has completely nullified the provisions of section 13352, subdivision (a), and other sections of the Vehicle Code. This is not a proper exercise of administrative power.

That the director has determined in advance that he will automatically suspend, at least, the license of every person suffering a first conviction of misdemeanor drunk driving, and that he, in fact, without exception, has adopted and applied this policy, are admitted facts. This is not only correctly stated in the majority opinion, but has been frequently announced by the director in the public press, and a statement to that general effect is printed on the back of every order of suspension sent to each driver whose license is suspended. It is also admitted in the briefs filed in these cases. Moreover, at oral argument, counsel for the department fairly conceded that such a policy had not only been announced, but was being applied in every case, including the cases now before the court.

The department argues, and the majority approve the argument, that this automatic policy of suspension is a reasonable exercise of "discretion," and is justified because of the admitted dangers created on our highways by those driving under the influence of liquor. Statistics are quoted demonstrating to a certainty that, in the public interest, such activity should, if possible, be restrained. Unquestionably, those statistics are appalling. They demonstrate that the incidence of drunk driving citations is increasing. Those statistics also demonstrate that a high percentage of accidents are caused by persons driving while under the influence of liquor. It is obvious that the efforts of the department and of its director

to stop the resulting carnage on our highways should receive our highest commendation. Certainly, the department should not be hampered when it seeks to accomplish this end through the exercise of any lawful powers conferred upon it by the Legislature. This court should attempt to interpret the applicable statutes, if possible, so as not to hamper or impede the department or its director in attempting to accomplish such a worth-while end. But no matter how praiseworthy the purpose and object of the department and its director may be, no matter how grim the statistics are, the department and its director are governed by the law. They possess only those powers conferred upon them by the Legislature. No matter how praiseworthy their purposes, their actions cannot be approved when the department or director act contrary to law or beyond their legal powers. The argument of respondent, approved by the majority, amounts to nothing more than the concession that the end justifies the means. That doctrine, legally, cannot be used to confer upon an administrative board or officer powers not conferred, expressly or impliedly, by the Legislature, nor can it be used to approve the actions of such board or officer in direct violation of an announced legislative policy. Yet this is precisely what the majority opinion approves.

That this is so is disclosed by an examination of the pertinent code sections. As the majority correctly point out, section 13352 provides for mandatory suspension for a period of 90 days upon a first conviction of misdemeanor drunk driving unless the court recommends, as it did in this case, that the license not be suspended. Section 13354, as already pointed out, confers the discretionary right upon the department to suspend upon a first conviction. No standards at all are provided in this section regulating the exercise of the discretion conferred.

It is quite obvious that the ''discretion'' to be exercised by the department under section 13354 is not, as the department contends and the majority hold, the authority to determine that general conditions require a general policy applicable to all cases. The ''discretion'' conferred is quite clearly the authority to determine, in each individual case, and under the facts peculiar to that case, whether action beyond that taken by the court is necessary to protect the public.

Quite obviously, the Legislature did not provide or intend that there should be an automatic mandatory suspension in

every case. Section 13352 specifically provides that there shall be a mandatory suspension *only* under certain circumstances, that is, when the court fails to take any action, affirmative or negative, concerning suspension. Had the Legislature intended that every licensee should be suspended upon a first conviction it would not have provided for exceptions in section 13352. Since it *did* provide for exceptions, it must have intended that cases falling within these exceptions should be treated differently from those which are covered by the mandatory suspension rule. If these licenses are not to be suspended automatically, then it must be necessary for the department to give some individual consideration to each case before it can suspend for any period of time. Either the suspension is to be automatic or it is to be decided on the merits of each case. There is no other real alternative. The departmental policy under attack, in legal effect, amends the discretionary provisions of section 13354, by approving a policy that allows the department to make all suspensions mandatory. Such an interpretation of the code sections completely ignores the fact that the Legislature has created two classes of first offenders, and that the department has lumped all first offenders into one class. Undoubtedly under section 13354, if the court recommends against suspension, the department may, nevertheless, *in the exercise of its discretion,* revoke or suspend in that particular case in spite of the recommendation of the court to the contrary. But that is the extent of the power to act. What the majority fail to recognize is that if a driver is subjected to automatic suspension, under the department's admitted policy, by departmental fiat the exceptions to mandatory suspension set forth in section 13352 have been completely written out of the code. The majority also fail to recognize that the admitted policy of the department makes meaningless the recommendation of the court made under the authority expressly conferred by section 13352. Certainly, it cannot be reasonably assumed that the Legislature expressly authorized the court to perform a useless act.

The only possible and reasonable interpretation of this section is that the Legislature had some purpose in mind when it provided that the court might make a recommendation against suspension, and that, if such a recommendation was made, the mandatory suspension provisions should not apply. Obviously, the Legislature must have intended that the recommendation of the trial judge, and the reasons underlying it, would be considered and weighed by the department before it

determined whether suspension or revocation was required. Each case differs. If the department determines, after considering the recommendation of the trial court and the facts of each case, that in that case a suspension is justified, it unquestionably has the power to order such suspension. But the legislative authority, granting the court the power to make recommendations can be purposeful only if the department is required to consider that recommendation and the facts, before reaching a determination in the case. To hold, as does the majority, that the department may impose an automatic mandatory suspension is to permit an administrative agency by simple administrative fiat to abrogate completely the authority granted by the Legislature to the judiciary. This is not sound law.

The power granted to the court to recommend that the department not suspend a particular license necessarily indicates that the Legislature must have intended suspension or revocation to be determined on an individual basis. The court has tried the individual defendant. Its recommendation is made on the basis of the particular facts and record before it. If the Legislature had intended that the department could assess predetermined automatic penalties rather than deciding that suspension, *or the lack thereof,* was proper in a *given* case, it would not have provided that the court could recommend against suspension if a particular case warranted such consideration. The very fact that there is provision for recommendation in individual cases by the courts, indicates that the Legislature intended that individual consideration should be given to each case before departmental action of any kind is to be taken.

It can be assumed that the Legislature was fully aware of the seriousness of the problem of intoxicated drivers. With this in mind, it nevertheless provided for consideration of each case on its merits. The department should not be permitted to overrule this legislative policy by determining that no individual consideration shall be given other than to determine the extent of the penalty to be assessed. It is for the Legislature to determine the nature of the discretion to be exercised by an agency, and the agency must act reasonably within the limits imposed. It is, of course, the law that an administrative agency cannot alter or amend the scope of a statute by administrative rule. (*Whitcomb Hotel, Inc.* v. *California Emp. Com.,* 24 Cal.2d 753 [151 P.2d 233, 155 A.L.R. 405].)

The importance of requiring the department to weigh the court's recommendation and the facts of each case before it suspends a license, is emphasized by the fact that the law permits the department to suspend or revoke a license before a hearing is had. At that time, before the hearing, the court's recommendation is the only affirmative evidence on behalf of the defendant that is before the department. It is certainly reasonable to assume that, when, by the provisions of section 13953, the Legislature empowered the department to suspend licenses prior to a hearing, and, at the same time, empowered the court to make recommendations, the Legislature intended that such recommendation should be considered by the department.

It must also be remembered that, while suspension is permissible prior to a hearing, the statute confers on the driver the right to a hearing, if he so desires (§ 14100). A "hearing," at least in the absence of statutory limitation, constitutionally means a real and full hearing. That means, as a minimum, a hearing at which the accused has the opportunity to show that the penalty should not be imposed. There is nothing in our law to authorize a star chamber proceeding in which the accused is prejudged. Certainly, there is nothing in any section of the Vehicle Code to indicate that the hearing is to be a limited hearing (even if the Legislature could so provide) in which the department is to do no more than determine whether there was a conviction, and, if so, decide the extent of the penalty to be imposed. In the absence of such specific limitations, the department must grant defendant a full hearing in which he can show not only that a lesser penalty should be imposed but also that there should be no penalty at all. Under the present departmental policy the defendant cannot make this showing. The department has predetermined that the license will be suspended for some period of time, and there is no way in which the defendant can offer evidence to mitigate the imposition of this basic penalty.

This type of hearing is neither fair nor constitutional. In *Moore* v. *State Board of Equalization,* 76 Cal.App.2d 758 [174 P.2d 323], an attack was made upon the type of hearing there afforded the petitioner. In holding that the type of hearing involved was lawful the court stated (p. 764) : ". . . it is clear that at a board hearing a licensee would have every opportunity, as this appellant had, to make a *full showing by way of mitigation, excuse or avoidance,* which showing of course would be addressed to the board's discretion in the

particular case." (Emphasis added.) A defendant who appears before the motor vehicle department, however, is not permitted to make a "*full* showing by way of mitigation, [or] excuse . . ." He can make *no* showing, at all, as to avoidance. The defendant cannot obtain a complete hearing at any stage in the proceedings against him in the department. This court should not assume that the Legislature intended to so abridge the legal rights of the licensee, at least in the absence of a clear mandate to this effect.

No case has been cited that permits an administrative board to exercise its statutory "discretion" in advance as the department in these cases has done. The only authorities that have considered the problem have held to the contrary. Thus in *Bank of Italy* v. *Johnson*, 200 Cal. 1 [251 P. 784], the court clearly held that an administrative agency cannot, by its own rules, circumscribe the exercise of its statutory discretion. In that case, the Bank Act provided that no branch bank could be opened without the approval of the bank superintendent, and it was further provided that such approval should be granted only when "public convenience and advantage" would be served thereby. The superintendent of banks announced that he would not grant a permit for a branch bank where the principal office of the bank was not also located in the same city, unless the applicant showed that public convenience and necessity required it. The court upheld this policy because the rule merely forewarned applicants that, in certain circumstances, they would have the burden of proof. But the court was careful to point out that the rule itself did not tie the hands of the superintendent in advance, as does the rule here involved. In the Bank of Italy case the rule, by express terms, permitted the superintendent to give his approval if the applicant sustained its burden. The court stated (200 Cal. at p. 15) : ". . . [T]he superintendent . . . may not by the adoption of any rule of policy or procedure so circumscribe or curtail the exercise of his discretion under the statute as to prevent the free and untrammeled exercise thereof *in every case, . . .* " (Emphasis added.)

In the instant case, the department, by its own admission, has formulated a policy which prevents the "free and untrammeled exercise" of its discretion "in every case." It has predetermined that certain minimum action will be taken regardless of the existence or nature of the extenuating circumstances which may exist in that case. It has attempted to alter the

discretion conferred upon it by the Legislature. If the task of judging each case on its merits has become or is too burdensome then it is for the Legislature, not the department, to establish a more workable procedure. Under the law as it exists today the department is required to consider each such case to determine whether departmental action is advisable. The department cannot, on its own initiative, declare that its policy will be otherwise.

For these many reasons, it is obvious that petitioner's legal rights have been materially and illegally impaired. In my opinion, the writ of mandate should issue ordering the director to set aside petitioner's order of suspension, and to grant to him the hearing provided by law.

SCHAUER, J.—I am impelled to agree with the dissenting conclusion announced by Mr. Justice Peters but in reaching such view I find it unnecessary to consider, and my concurrence does not extend to, the areas wherein his dissenting opinion expresses accord with the views of the majority.

In resolving the issues here presented I deem it imperative not to lose sight of or transgress the established principles that " 'The use of highways for purposes of travel and transportation is not a mere privilege, but a common and fundamental right, of which the public and individuals cannot rightfully be *deprived* . . .' [but that] 'The use of the public highways by motor vehicles, with its constant dangers, renders the reasonableness and necessity of *regulation* apparent.' " (*Escobedo* v. *State of California* (1950), 35 Cal.2d 870, 875-876 [1] [222 P.2d 1] ; italics added.)

With fidelity to the above quoted principles I can and do concur in the conclusion of Justice Peters, and in the reasoning supporting this conclusion, that in the circumstances of this case "petitioner's legal rights have been materially and illegally impaired" and that "mandate should issue ordering the director to set aside petitioner's order of suspension."

McComb, J., concurred.

Petitioner's application for a rehearing was denied June 29, 1960. Schauer, J., McComb, J., and Peters, J., were of the opinion that the application should be granted.